We'll move to the fourth case this morning, Engineered Abrasives v. American Machine Products. Illinois has a strong policy prohibiting unbargained-for windfalls in a settlement release. That's why Illinois courts strictly construe releases against the parties seeking to benefit from them. That's why Illinois courts require the intention of the parties in a release to be stated with great particularity. And that's why Illinois courts ensure that general words of release are constrained in effect by the specific recitals in the settlement agreement. Now, had the district court properly applied those principles of Illinois law here, it would have concluded the same thing that this court concluded in the case of Bank of Commerce v. Hoffman. And that's that the settlement agreement in this unrelated defamation case was at the very least ambiguous as to whether the parties intended to release the judgment in this case. And the court should have looked at extrinsic evidence to make that determination. Now, familiar with the phrase on all fours, we heard earlier today on all fives. Bank of Hoffman is a perfect 10 on this case. And I'd encourage the court, you know, we cited Bank of Commerce in our brief, obviously. I'd encourage the court, though, to look for itself at the settlement agreement in that case. And that was in the record, the court below, it's the Central District of Illinois, 413CV4075. And it's docket entry 23-1. And what the court will see is a settlement agreement that's set up almost exactly in structure as the settlement agreement in this case. In Hoffman, as in this case, you have specific recitals that talk about simply the transaction or matter that was in front of the parties at that moment. In Hoffman, it was $157,000 loan that was at issue there. Here, the recitals talk about the claims and defenses in the defamation action and only the defamation action. Also, in those two settlement agreements, you'll see a broad general boilerplate release that, if taken in isolation, would seem to release everything under the sun. Now, the district court, looking only at that broad boilerplate release, concluded that the parties unambiguously intended to release the judgment in this case, which was unrelated to this defamation action. But as Hoffman teaches, the district court couldn't just look at that broad boilerplate release in isolation. It had to read the release in the context of the entire settlement agreement, and specifically the recitals in the settlement agreement, which is the repository of the parties' intent in the agreement. Had the district court done so, it would have concluded, for the same reason that this court did in Hoffman, that the settlement agreement was at best ambiguous as to what the parties' intent was, with reference to the judgment in this case. In the briefing, my adversaries point out that they say, well, Hoffman is different because there was language in the release. There was conflicting language in the release. But again, if you look at the actual settlement agreement in Hoffman, that's not the case. You have a release provision. We've done kind of a side-by-side comparison in the brief on page 22. It's structured nearly identical to the release here. The relevant language that this court was referring to in Hoffman was contained in the recitals, just as the relevant language of specific intent here is contained in the recitals. And there's a whole host of Illinois cases that apply this principle that limit general boilerplate release language like we have here to the specific claims that are referenced in the settlement agreement. And had the district court looked at the settlement agreement in its entirety and concluded that this was ambiguous and looked at the extrinsic evidence, we think that the extrinsic evidence here is unmistakably clear that the judgment in this case just wasn't on the table in the settlement of the defamation suit. I'm not following you as to what else she would have seen if she looked at the settlement agreement as a whole. In Hoffman, as I understand it, you had two that conflicted. What else would the judge have seen if she looked at the agreement as a whole? Yeah. In Hoffman, there was the conflict. And the conflict was between what was in the recitals and what was in the specific release language. And that same conflict is present here. If you look at the recitals, Your Honor, there's five of them. And all of them are referring to the claims and defenses in the unrelated defamation case. They're making clear that the party's intent is to release those and to avoid further litigation on those. And there's no mention of a global release. There's no mention of the judgment in this case. There's no mention of the other unrelated state court action. And so that's the same conflict that was created in Hoffman. And that's the same conflict you'll see in a lot of the Illinois cases that we cited in our brief on pages 24 to 25. I want to call out a couple of them. Kerr v. Schrempf, 60. Before you go too deeply into that, I just want to be sure. So the ambiguity in your settlement agreement arises from what's not in there? No. The reference to the other issue. The ambiguity arises when you have specific recitals that are limited to the claims that were at issue in the defamation case. And then you have this broad boilerplate provision that could be read as releasing everything under the sun. Because of the policies in those Illinois rules I talked about earlier, Illinois, of course, required at least to go to the extrinsic evidence and to say, hey, did the parties really intend this incredibly broad release? Or was it actually simply limited to what's being discussed in their recitals, which is really where the party's intent is reposed? And had the district court gone for the extrinsic evidence here? It's clear that this judgment just wasn't on the table at that settlement conference. It wasn't discussed in the party's pre-settlement exchange of letters. It wasn't discussed at the settlement conference itself. And at the colloquy with the magistrate judge, the settlement and the defamation cases, going through what the material terms are, he lists off three terms. None of those are the release. Again, Illinois law puts the burden on the party that wants a specific unrelated claim to be released to be forthright about it and say this is what we want. That wasn't done here. And so the district court should have concluded that this judgment was not released and that it should not have found that the judgment was released. And I'll reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the Court, Nathan Carlsgad, on behalf of the defendants in this action, American Machine Products and Service, Edward Resham, and his son, Edward C. Resham. Simply put, the district court, Judge Ellis, reached the correct result in this case. In support of that position, I offer two arguments to you here today. First, I would like to address the ways in which the present case is legally and factually distinguishable from the Hoffman case, the one in which the appellant was just giving you an account of. And second, I would like to address a more practical explanation as to why, under these particular circumstances, it was commercially reasonable to opt for a general release rather than one that was more specific. As the Hampton v. Ford Motor decision points out, in Illinois a general release typically covers all claims of which the signing party has actual knowledge. Here, EA is trying to escape this bedrock principle. Fundamentally problematic to their position is that they admit to knowing about the judgment at the time that they drafted the release, at the time that they proposed the release, at the time that they reviewed the release, and at the time that they executed the release and had it read into the record down at the district court. Moreover, the defamation complaint out of which this broad settlement agreement arose included allegations with respect to the judgment entered in this case. This is fatal to their claims. The general release here specifically states that EA hereby releases defendants from any and all rights, claims, debts, liabilities, obligations, damages, costs, attorney's fees, expenses, including but not limited to the claims and defenses set forth in this action. To be certain, plaintiff's counsel drafted and proposed a broad and extensive release and the defendants accepted that release. And as Judge Ellis acknowledged in her decision, the aforementioned language definitely encompasses the judgment here. In spite of this, EA routinely returns this court to its holding in the Hoffman decision as being illustrative of its argument. However, the Hoffman decision is distinguishable for a number of reasons. First, unlike Hoffman, where the main text of the settlement agreement contained a limited scope release under the heading 1, tender of deeds in lieu of foreclosure. Now I know appellant's counsel gave reference to the recitals, but what's important here is that that recital is incorporated into the body of the text of the actual release agreement. It's the very first paragraph. And if you look at the first paragraph there, you will see under the heading tender of deeds in lieu of foreclosure a limited scope release that relieves the quote, unquote, relieved parties from any further liability whatsoever arising out of or otherwise related to the loan documents or properties. Thus, not only is it in the recital, it's actually within the terms of the release agreement. This, of course, is followed by the second paragraph of that agreement, which is titled release of released parties. There you'll find the very broad general release that they found to be in conflict with the specific language set forth in both the recital and within the confines of the release agreement itself in the Hoffman decision. Here, there is no corresponding specific or limited release provision. There is just the general mutual release provision. And while the mutual release acknowledges the action in which it arises, it uses an expansive language to say that it includes but is not limited to, to broaden rather than narrow its reach. Accordingly, there is no similar conflict as the one that was found in the Hoffman decision. Absent that conflict, the court cannot here determine that there is an ambiguity, and if there is no ambiguity created, the court should not look outside the four corners of the release agreement. I'm unaware of any Illinois case that holds that an uncontradicted general release does not release all claims to which the parties had actual knowledge of at the time that they executed it. Moreover, unlike Hoffman, the general release here is a mutual release. It states that the defendants also hereby release EA from any and all rights and claims, actions, and or causes of action of every nature, character, and description, whether known or unknown, including but not limited to the claims and defenses set forth in this section. At the time this release was executed, defendants had not filed any counterclaims. This provides further support for the notion that the language in the agreement contemplates that it will extend beyond those claims expressly set forth in the pleadings. Because, as I have said, because there is no parole evidence, I'm sorry, because there is no ambiguity, the court may not look to parole evidence to analyze the intent of the parties, and thus we are left simply with the broad release language, and the broad release language, as Judge Ellis points out, released the particular judgment here. With respect to my second argument, I would like to give some context as to why it was commercially reasonable to opt for a general release rather than a specific release in this particular case. As the Illinois Supreme Court noted in Borkowski v. Lucente, and as other intermediate courts have noted in Miller, there are times when including a list of every action in a broad release may detract from the broad and general scope of the release that's being agreed upon by the parties. Here, the language was already broad enough. The parties knew about the claims. Everybody, because they were party to all actions, already knew that the other party knew about the claims. Thus, in some sense, it would have been redundant to set forth each of the specified claims and each of the specified causes of action in a very long recital provision. Further, limiting language by including a limiting provision may have resulted in what has resulted in many of the cases cited by the plaintiffs here, which is that it creates an ambiguity as to what the parties actually want to release when it is found to be in conflict between a specified and limited scope release and that of the general release. And third, and I think this might be the most coloring, is that these parties have a long history. EA, since my clients have left their employment in 2011, have subjected them to litigation for over six years. They have been in dogged pursuit of their former employee. There is a 2013 trademark action. There is the 2013 parallel state court action in Will County. There is the 2015 bankruptcy adversary proceedings. There is the 2015 defamation case. And now there's another recently filed 2017 state court action in Will County which appears to mirror its prior claims. As such, under these circumstances, a broad release with expansive language where the parties know what claims they already have pending would seem to be entirely prudent as a means of resolving all of the issues between the parties. A limiting language could only assure another battle to come. At the time of the release, were all these other things out there? Your Honor, there was two other actions. There was the judgment that was out there in this particular case and there was the Will County action that was still pending. So there was both a judgment that was out there and the Will County action. The one that they were engaged in, this was a $75,000 case or something like that? Are you talking about the Will County action? I'm talking about what I guess they're trying to say the release was intended for after a settlement. If I understand you correctly. Well, I'm trying to understand exactly what was at hand when this release was signed. What was at hand was the current cases that were pending at the time was both this defamation case and the Will County case. And what was the default? Was that the default judgment originally? The default judgment was from the 2013 case, this case, in which the default judgment was entered and then a monetary award of $200,000 was later awarded to them. Well, a long time ago. This is too long to remember because I was actually involved in a case where there was a huge amount of money owed, but there was a question of whether that person, the judgment against, had any ability to pay. Well, that's actually a good point, Your Honor. Well, I bring it up because a relative came forward with a limited amount of money, which you say, hey, we'll take it and release the rest because otherwise we're not going to get a nickel. Yes, and if I may just finish one last point. Please do. With respect to the argument that the appellant raised as to the term windfall, which has been dandied about to some extent, I'd like to push back on that and say, although this judgment was in excess of $700,000, its actual value was substantially lower. Edward Resham and his son had both been driven into bankruptcy, and while the judgment survived the bankruptcy, they had almost no assets to speak of from which to pay that judgment. And after years of trying to collect and then a prolonged hibernation, EA was no closer to satisfying the judgment at the time that they agreed to this particular release. I'd ask that the court affirm the district court's ruling, and thank you for your time. Thank you. Thank you, Your Honor. Just to address a couple of factual points first. The reason why there's all this litigation is because the Resharms stole from my clients, they defamed them, and then they violated court-ordered injunctions. And in fact, what had happened leading up to this defamation case was after there was an injunction not to contact our customers, after this default judgment had been entered, which also included important injunctive relief from my client, they then sent an email to one of our main customers saying that our machines were liable to explode and cause serious injury to others. So to the extent that there's a lot of litigation here, it's of the appellee's making. You and Mr. Carlson obviously have a better understanding of the history than we do. Is any of this in the record, the bankruptcy, the condition of your client, the contacting your customer later? Is that in the record? Yes, Your Honor. The discussion of the facts of the defamation suit are actually in the first page of the recitals of the release, as we discussed the email. And then if you're looking at the bankruptcy, if you look at the supplemental appendix, essay 34, essay 36, you'll see where my client went into the bankruptcy to make this judgment non-dischargeable. My client wasn't worried about collecting on the judgment, but they wanted this judgment in place not only because they wanted to prevent the appellees from continuing this behavior, but also because this injunctive relief was very important. So it wasn't a question of ability to pay, we already knew they were bankrupt. We went into the bankruptcy to make it non-dischargeable so that we could have this judgment in place. And one last point, if I will, just on the law. Again, Illinois law is clear that when you have specific recitals in an agreement that are talking about a specific set of claims, and then you have a broad general boilerplate release, absent extrinsic evidence showing intent otherwise, the court is going to limit that release to the specific claims in the recital. And those are the cases that we cited on pages 24 to 25 of the brief. I'd like to call the court's attention to Kerr v. Schrimp, the Lively decision, Carlisle v. Snap-on Tubes, Ainsworth Corporation, and the Gladness case. All those are cases where specific recitals trumped a general broad boilerplate release. Thank you, Your Honor. Thanks to both counsel, the case is taken under advisement.